UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DENISE BAILEY, ET AL. | * | CIVIL ACTION |
| | * | NO. 12-2795 |
| versus | * | |
| | * | SECTION: "H" |
| NEWELL NORMAND, ET AL. | * | Judge Milazzo |
| | * | |
| | * | DIVISION "2" |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | Magistrate Wilkinson |

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT BASED UPON QUALIFIED IMMUNITY ON BEHALF
OF DEFENDANTS, ARTHUR S. LAWSON, JR.,
SCOTT VINSON, JAMES PRICE, AND RUSSELL LLOYD

MAY IT PLEASE THE COURT:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Uniform District

Court Rule 7.4, the defendants, ARTHUR S. LAWSON, JR. ("LAWSON"), SCOTT

VINSON ("VINSON"), JAMES PRICE ("PRICE"), AND RUSSELL LLOYD

("LLOYD") (all defendants collectively hereafter, "GRETNA"), submit the following

memorandum in support of their Motion for Summary Judgment based upon their

defense of qualified immunity, establishing that there is no genuine issue of material

fact, and that they are entitled to judgment as a matter of law against plaintiffs, DENISE

BAILEY, ET AL., (collectively hereafter, "BAILEY"), dismissing all of their claims

against GRETNA with prejudice.

## I.     SUMMARY OF PERTINENT ISSUES/FACTUAL HISTORY

The plaintiffs have alleged that, while executing a search and seizure narcotics warrant on November 16, 2011 at the home of petitioner, WILLIE NELL BULLOCK ("BULLOCK"), located at 218 8th street, apartment B in Gretna, GRETNA used excessive force against BULLOCK and unlawfully arrested and/or imprisoned BULLOCK.  In the complaint, Plaintiffs allege that several officers entered BULLOCK'S bedroom, grabbed her from her bed, threw her on the floor causing her face to strike the concrete - knocking out several teeth.  Plaintiffs further allege that several officers beat BULLOCK while she was on the ground while yelling for her to give up the drugs, including an allegation that VINSON kicked BULLOCK in her side where she had a recent illeostomy / stoma surgery, causing her stoma to burst.  (R. Doc.1, § 8). Plaintiffs have also alleged that defendants physically assaulted and battered Petitioner while she was laying face down on the floor and kept her on the floor for over thirty (30) minutes while they conducted a search of the residence and refused BULLOCK'S request for medical treatment.

During the depositions of all of the named plaintiffs, as well as the seven witnesses identified by the plaintiffs, all of the plaintiffs and witnesses admitted that none of them saw which officers actually entered BULLOCK'S residence, and none of them saw any defendant or other officer strike BULLOCK.  Likewise, all plaintiffs and

plaintiffs' witness have testified and admitted that BULLOCK was never arrested.

The facts and evidence establish that neither VINSON, PRICE, or LLOYD ever entered the residence of BULLOCK, never physically encountered BULLOCK inside of her residence, never battered or assaulted BULLOCK, and never arrested BULLOCK. The allegations made by the plaintiffs in their complaint are vehemently denied by GRETNA as being both untrue and unsupported by the facts and evidence.  It is submitted that at no time did the defendants employ any excessive force in the execution of the narcotics warrant, and the defendants did not batter, assault, or unlawfully imprison BULLOCK.  There is no evidence in support of the plaintiffs' allegations that GRETNA employed excessive force against BULLOCK, and/or that they unlawfully arrested BULLOCK, notwithstanding the unsubstantiated and false allegations contained in the complaint.[1]

GRETNA does not deny that, in executing the search and seizure narcotics warrant at BULLOCK'S residence on November 16, 2011, several members of the Gretna SRT team entered BULLOCK'S residence, although none are named defendants in these proceedings. (Exhibit "A").  It is likewise not denied that when the SRT team entered her residence, BULLOCK was inside of her residence, however, members of the

---

[1]    These defendants have also filed an additional separate Motion for Summary Judgment listing additional facts and seeking dismissal of the plaintiffs' claims because none of the named defendants ever entered the residence, physically encountered BULLOCK, battered BULLOCK, or arrested BULLOCK.  (R. Doc. No. 55).

SRT team encountered BULLOCK and escorted her out of the residence. It is denied by GRETNA that any defendant used excessive force (or any force) against BULLOCK or unlawfully arrested BULLOCK at any time. Other than the testimony of the SRT Team members,[2] the only other evidence recounting what occurred in the residence after the SRT team entered consists of the inconsistent and conflicting statements provided by BULLOCK to the Internal Affairs Division of the Gretna Police Department.[3]

In her first statement of the Internal Affairs Division, BULLOCK stated that when she exited her bedroom, there were officers in her face with guns drawn and one of the officers "kicked her legs out from under her and she hit the floor and her lip started bleeding." She then advised that one of the officers escorted her out of her residence and sat her in a chair outside.

In her second statement to the Internal Affairs Division, BULLOCK stated that as she was exiting her bedroom, she saw numerous officers with guns drawn. She then advised that all she knew is that she was on the floor. When asked how she got on the floor, she advised that she thought the man kicked her that she was "not really sure."

---

[2]     The plaintiffs only chose to conduct the deposition of the Captain of the SRT Team, VINSON (who did not enter the residence), and one member of the SRT, Ryan Mekdessie. No other members of the SRT Team were deposed.

[3]     It is contended by GRETNA that the statements of WILLIE NELL BULLOCK are hearsay and inadmissible at the trial of this matter. However, because the Plaintiffs will attempt to rely upon these statements, the defendants for purposes of this Motion for Summary Judgment, and to properly illustrate the basis for GRETNA'S claim of qualified immunity, GRETNA is referring to Bullock's statements in anticipation of Plaintiffs' use.

When BULLOCK was specifically questioned about how she was brought to the ground, she first advised that she "was not really sure" and then she advised that an officer "kicked her to the ground by kicking her feet out" from under her.  She then stated that all she remembers after that was that she was sitting outside of her residence.

Again, it is strenuously denied that any defendant brought BULLOCK to the ground during the execution of the narcotics warrant.  However, notwithstanding that denial, it is submitted by GRETNA that even if it is accepted as true that, during the execution of the narcotics warrant, members of the SRT swept BULLOCK'S legs from under her to place her on the ground for officer safety in securing the residence, they are entitled to qualified immunity for those actions.

GRETNA is entitled to summary judgment as there is no genuine issue of material fact, and they are entitled to judgment as a matter of law as to all of plaintiffs' claims based upon qualified immunity.

II.    <u>LAW AND ARGUMENT</u>

A.    <u>Standard for Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure govern Summary Judgments, and it states, in pertinent part, "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."

Summary judgment is an integral part of the Federal Rules as a whole which are designed to secure the just, speedy, and inexpensive determination of every action.[4] Movant bears initial responsibility of demonstrating absence of a substantial issue of material fact with respect to those issues upon which movant bears burden of proof at trial.[5] In a motion for summary judgment, the moving party may establish by <u>competent evidence</u> that no issue of material fact exists[6]   If nonmovant bears burden of proof at trial, movant may merely point to absence of evidence, and thus shift to nonmovant burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[7]

An issue is "material," precluding summary judgment, if its resolution could affect the outcome of the action.[8]   In deciding whether a fact issue has been created, precluding summary judgment, the court must view the facts and the inferences to be

---

[4]      Ragas v. Tennessee Gas Pipeline, 136 F.3d 455, (5th Cir. 1998)

[5]      Lindsey v. Sear Roebuck, 16 F.3d 616, (5th Cir. 1994).

[6]      Guillory v. PPG Industries, Inc., 434 F.3d 303, (5th Cir. 2005).

[7]      Lindsey, 16 F.3d at 305.

[8]      Daniels v. City of Arlington, 246 F.3d 500, (5th Cir. 2001).

drawn therefrom in the light most favorable to the nonmoving party.[9]  An issue is genuine, for summary judgment purposes, if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.[10]

B.    Qualified Immunity

Generally, government officials performing discretionary functions have qualified immunity, shielding them from civil damages liability as long as actions could reasonably have been thought consistent with rights they are alleged to have violated. Anderson v. Creighton, 107 S.Ct. 3034, (1987).   Doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known.  Pearson v. Callahan, 555 US 223, (2009).

Evaluating a qualified immunity claim is a two step process. First, the court must determine whether the plaintiff has alleged sufficient facts to demonstrate a violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001) , overruled in part by Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Second, the court must determine whether the constitutional right was clearly established at the time the alleged violation occurred.   Failure to answer either of these inquires in the

---

[9]      Id.

[10]     Goodson v, City of Corpus Christi, 202 F.3d 730, (5th 2000).

affirmative results in a finding of qualified immunity for the defendant in question. Francois v. Jefferson Parish Sheriff's Office, 2013 WL 654640, (EDLA, 2013).

In Pearson, the United States Supreme Court advocates this two step approach to analyzing qualified immunity, and made it clear that courts are free to reorder the analysis based on the circumstances of each individual case. Id., citing Pearson, 555 U.S. at 236, 242.

In Muehler, it was held that, in executing a search warrant searching for weapons and evidence of gang activity at a house, SWAT team members who entered residence and handcuffed and detained all occupants found inside for 3-4 hours while they conducted the search of the residence, was not unreasonable. Muehler v. Mena, 125 S.Ct. 1465, (2005). Specifically, the Supreme Court held, <u>"officers may 'detain an occupant of the place to be searched' and may use "reasonable force to effectuate the detention."</u> <u>(Emphasis Added)</u>. Id.

In Mason, the plaintiffs argued that the defendant officers used excessive force in executing the search warrant because officers entered the home with their guns drawn and numerous plaintiffs testified that they were physically forced and violently slammed to the ground and held a gun point throughout the search. The plaintiffs argued that under those circumstances, the officers' conduct was unreasonable and amounted to excessive force. Mason v. Lowndes County Sheriff's Dept., 106 Fed. Appx. 206, (5th Cir.

2004).  In examining the plaintiffs' claims of excessive force, the Fifth Circuit noted, "claims of excessive force are analyzed under the 'reasonableness' standard of the Fourth Amendment."  Id., citing, Graham v. Connor, 490 U.S. 386, 395, (1989).  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than in hindsight. Id. at 396, 109 S.Ct. 1865.  The proper inquiry is whether the use of force was "grossly disproportionate to the need." Id. at 902.  In dismissing the plaintiffs' claims of excessive force, the Court noted that the officers  entered a home with an unknown number of occupants and with the expectation of encountering a dangerous suspect who was known to be involved with drug activity and when the officers entered, one of the plaintiffs attempted to retrieve a firearm. The Court further noted that the plaintiffs were only detained for a short period of time at gun point.  As a result, the Fifth Circuit affirmed the district's court's grant of summary judgment on qualified immunity finding that the officers' actions were not unreasonable.  Id.

C.     The Defendants are Entitled to Qualified Immunity

GRETNA denies that any excessive force was applied in the execution of the search warrant.  Further, GRETNA denies that any of the named defendants, VINSON, PRICE, LLOYD, or LAWSON, ever entered BULLOCK'S residence, and they likewise never physically confronted or assaulted BULLOCK.  BULLOCK was never arrested.

However, notwithstanding the foregoing, even if this Court were to accept and assume that these defendants entered BULLOCK'S residence, and even if this Court were to accept and assume that, based upon BULLOCK'S statements, the defendants swept her legs and brought her to the floor, the defendants are still entitled to qualified immunity for their actions.

It is undisputed that the defendants had lawfully obtained a search and seizure warrant for BULLOCK'S residence to search for and seize evidence of illegal narcotics. (Exhibit "A").  It is likewise undisputed that the defendants were executing that search and seizure warrant on November 16, 2012 at BULLOCK'S residence.  Even if this Court were to accept BULLOCK'S statements as true, that the officers swept or kicked her legs out from under her to place her on the ground, and then she was escorted out of her residence and sat in a chair outside, during the execution of the search and seizure warrant, the defendants are entitled to qualified immunity.

In executing the warrant and securing the residence, the defendants are entitled to use all reasonable force necessary to secure the premises to allow for officer safety and for the search to proceed.  Unless this Court finds that the force applied by the defendants was "grossly disproportionate to the need" (which it was not), the defendants are entitled to qualified immunity.

During his deposition, VINSON  testified that as the Captain of the Special

Response Team ("SRT"), he devised the plan for the SRT team to enter the residence, and based upon the threat assessment performed, the SRT team was the safest option for execution fo the warrant.

When questioned regarding the threat assessment devised in making the decision to deploy the SRT team, VINSON testified that the SRT team was the best and safest option based upon the facts they had received from a confidential informant regarding narcotics distribution, as well as the criminal history of the targets of the warrant, along with the prior threats made against the Gretna Police Department by the parties involved (and their family and associates).  There was also concern about  the number of individuals who may be in the house who were not family members of BULLOCK or otherwise known to the officers, the SRT team was the safest option.[11]  VINSON also testified that due to BULLOCK'S condition, as well as the fact that children may be in the area, the SRT team would not employ any special weapons, such as flash bang grenades or smoke, in securing the residence but only employ minimal force.  (Exhibit "B", pgs.  21-28 and 53-55).

The defendants are entitled to summary judgment based upon qualified immunity.  The members of the SRT team entered the residence to serve the search and

---

[11]     There were additional considerations discussed as well, such as the existence of a back entrance/exit to the residence which could not be observed covertly.

seizure warrant.  Upon entering the residence it was their job to secure the residence to allow additional officers to then enter the residence and perform the search.  Even if this Court were to assume as true that upon entering, members of the SRT team swept BULLOCK'S legs from under her to get her to the ground (which is denied), this action is not unreasonable as it would have been performed during the active execution of the search warrant while the SRT was still securing the residence, not knowing what other persons may have been in the home.  GRETNA'S actions were not unreasonable, specifically, securing the residence for officer safety, is a lawful action taken by GRETNA which is supported by qualified immunity.  While GRETNA denies any of the actions alleged by plaintiffs were taken against BULLOCK, even if those actions occurred, they were not unreasonable under the circumstances, and GRETNA is entitled to qualified immunity.

As previously stated, evaluating a qualified immunity claim is a two step process. First, the court must determine whether the plaintiff has alleged sufficient facts to demonstrate a violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001)  Second, the court must determine whether the constitutional right was clearly established at the time the alleged violation occurred.  Failure to answer either of these inquires in the affirmative results in a finding of qualified immunity for the defendant in question.  Francois v. Jefferson Parish Sheriff's Office, 2013 WL 654640, (EDLA,

2013).

In applying the two factor test to the facts at issue in this litigation it is clear that the defendants are entitled to dismissal based upon qualified immunity. First, the plaintiffs have failed to allege sufficient facts to demonstrate a violation of a constitutional right. The defendants were executing a lawfully issued search and seizure warrant. In executing the warrant, the defendants are legally justified in using all force reasonably necessary to secure the residence, including detaining all occupants inside of the residence. While it is denied that any force was used by the defendants against BULLOCK, even if BULLOCK was taken to the ground as she stated and then seated outside of her residence, these actions are reasonable under the circumstances and the defendants are entitled to qualified immunity. Under the facts and evidence presented, the plaintiffs have failed to demonstrate violation of a constitutional right.

Second, the defendants did not violate any clearly established constitutional right on behalf any of the plaintiffs because in entering and securing the residence they were executing a lawfully issued search and seizure warrant. The defendants actions in executing that warrant were in accord with existing law and all actions taken by the defendants in executing the warrant were proper and lawful. Again, the plaintiffs have failed to prove that any established constitutional right was unlawfully violated by the defendants and the defendants are entitled to qualified immunity.

WHEREFORE, for the reasons set for th herein, the defendants, ARTHUR S. LAWSON, JR., SCOTT VINSON, JAMES PRICE, AND RUSSELL LLOYD, pray that summary judgment be entered in their favor based upon qualified immunity, against plaintiffs, DENISE BAILEY, ET AL., effectuating a dismissal of all claims, with prejudice, by plaintiffs, Denise Bailey, et al., against ARTHUR S. LAWSON, JR., SCOTT VINSON, JAMES PRICE, AND RUSSELL LLOYD.

Respectfully submitted,

/s/ Leonard L. Levenson

LEONARD L. LEVENSON, T.A. (#8675)
CHRISTIAN W. HELMKE (#29594)
DONNA R. BARRIOS (#32093)
427 Gravier Street, Third Floor
New Orleans, LA 70130
Telephone:  (504) 586-0066
Facsimile:  (504) 586-0079
E-mail:        lenlawyer@aol.com
                  cwhelmke@bellsouth.net
                  dbarrios@bellsouth.net
ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THIS 1ST DAY OF SEPTEMBER, 2014, I ELECTRONICALLY FILED THE FOREGOING PLEADING WITH THE CLERK OF COURT USING THE CM/ECF SYSTEM WHICH WILL AUTOMATICALLY SERVE NOTICE OF THE ELECTRONIC FILING TO ALL COUNSEL OF RECORD.  I FURTHER CERTIFY THAT I MAILED THE FOREGOING PLEADING AND NOTICE OF ELECTRONIC FILING BY U.S. MAILS, FIRST CLASS, POSTAGE PREPAID AND PROPERLY ADDRESSED TO THE FOLLOWING NON-CM/ECF PARTICIPANTS:  _____N/A_____.

/S/ LEONARD L. LEVENSON