UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


DENISE BAILEY ET AL.                          CIVIL ACTION


VERSUS                                        NO: 12-2795


NEWELL NORMAND ET AL.                         SECTION: "H"(2)


## ORDER AND REASONS

On October 7, 2014, this Court GRANTED the Defendants' Motion for
Summary Judgment Based upon Qualified Immunity (R. Doc. 91) and DENIED
all other pending motions as moot. The Court's reasons for these actions are set
forth below.


## BACKGROUND

Plaintiffs, appearing both individually and on behalf of their deceased
mother Willie Nell Bullock, allege that on November 16, 2011, the Gretna Police
Department and Special Response Team (SRT) executed a search warrant at
Bullock's home.  During the course of the execution, Plaintiffs allege that officers

1

kicked Bullock, causing her to fall, strike the concrete, and suffer injuries to the mouth and abdomen.  At the time, Bullock was 65 years old, suffering from stage 4 cancer, and recovering from surgery on her abdomen.  Plaintiffs allege that these injuries resulted in a delay of chemotherapy treatment, which led to Bullock's ultimate death.  Plaintiffs brought claims of excessive force under 42 U.S.C. § 1983, assault, battery, false imprisonment, and false arrest against three Gretna police officers, Scott Vinson, James Price, and Russell Lloyd. In addition, they asserted claims of supervisory liability under § 1983 and allegations of negligent hiring, supervision, and training against Chief of Police Arthur Lawson Jr. and Scott Vinson, in his capacity as Lieutenant Commander of the SRT. Defendants moved for summary judgment based on qualified immunity.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the

---

[1] Fed. R. Civ. P. 56(c) (2012).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6]   "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

---

[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

Qualified immunity protects officers charged with discretionary duties from suit unless their conduct violates a clearly established constitutional right.[9] Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."[10]

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry.  The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. . . . The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation.[11]

Plaintiffs have the burden of rebutting "the officers' qualified-immunity defense by establishing a genuine fact issue as to whether the officers' allegedly wrongful conduct violated clearly established law."[12]

### A. Officers James Price, Russell Lloyd, and Scott Vinson

Plaintiffs have failed to carry their burden to show that Officers Price, Lloyd, and Vinson violated a federal right.  In their complaint, Plaintiffs alleged that Price, Lloyd, and Vinson assaulted Bullock in her home during the execution of the search warrant.  However, through the course of discovery, Plaintiffs learned that this allegation was false.  Indeed, in their Opposition to this Motion, Plaintiffs state that Gretna police "[o]fficers, Mekdessie and Zemlik,

---

[9] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 378 (5th Cir. 2005).

[10] *Id.* at 380.

[11] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal quotations and alterations omitted).

[12] *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).

kicked Ms. Bullock's feet from under causing her to fall on her face and strike the concrete resulting in injuries to her mouth and abdomen."[13] Plaintiffs offer no facts or evidence to support the allegation that Price, Lloyd, and Vinson engaged in any acts directed toward Bullock and do not rebut Defendants' assertion that these officers never even entered Bullock's home during the execution of the search warrant. Accordingly, Plaintiffs have not carried their burden of establishing a genuine issue of material fact as to whether Price, Lloyd, and Vinson violated a federal right. Therefore, Price, Lloyd, and Vinson are entitled to qualified immunity and the claims against them are dismissed.

## B. Chief of Police Arthur Lawson, Jr. and SRT Leader Scott Vinson

Plaintiffs also bring claims of supervisory liability against Lawson and Vinson. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[14] "Rather, a plaintiff must show either that the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation."[15] The Fifth Circuit has frequently held that supervisor liability "requires a showing of the supervisor's deliberate indifference to the known or obvious fact that such constitutional violations would result and that generally requires that a plaintiff demonstrate at least a pattern of similar violations."[16] "Actions and decisions by officials that are

---

[13] R. Doc. 73.

[14] *Hobart v. Estrada*, 13-20022, 2014 WL 4564878 (5th Cir. Sept. 16, 2014).

[15] *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).

[16] *Id.* (internal quotations and alterations omitted).

5

merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[17]

In their complaint, Plaintiffs alleged that Lawson was liable for his negligence in "hiring, training, testing, supervising and retaining deputies."[18] In their opposition to this Motion, Plaintiffs support this claim with only the opinion of their expert that the Gretna Police Department does not adequately train, discipline, or supervise their officers because (1) they do not keep a record of complaints made against officers and (2) no officers were disciplined in connection with this incident.

Plaintiffs have not, however, alleged how these actions violated Bullock's constitutional rights, nor how they are causally connected to the incident at issue in this case.  These allegations do not demonstrate a pattern of  similar incidents, nor do they show a deliberate or conscious choice to endanger constitutional rights.[19]  Plaintiffs offer no evidence of past violations of Lawson, the officers alleged to have assaulted Bullock, or the Department.  They offer no evidence of a dangerous disposition of the officers that entered Bullock's home and thus do not allege that Lawson was negligent in failing to address such.  In *Estate of Davis v. City of North Richland Hills*, the Fifth Circuit reversed the denial of qualified immunity on claims of negligent supervision and training to

---

[17] *Estate of Davis*, 406 F.3d at 381.

[18] R. Doc 1.

[19] *See Estate of Davis*, 406 F.3d at 383 ("Rather, the 'plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured.' Moreover, a showing of deliberate indifference requires that the Plaintiffs 'show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights.'" (footnotes omitted)).

the supervisors of a SWAT officer who shot and killed a resident during the execution of a search warrant despite the fact that the officer was known to be prone to excessive force and had inappropriately fired his weapon during multiple training exercises.[20]   The court found that these facts were not sufficient to demonstrate a prior pattern of constitutional violations by employing excessive force.[21]   The allegations of negligence against Lawson and the Gretna Police Department do not come close to those made in *Estate of Davis*.  In light of the Fifth Circuit's grant of qualified immunity in that case, Lawson is certainly entitled to qualified immunity here.

In their opposition, Plaintiffs also appear to allege that Vinson was negligent in sending the SRT, the equivalent of a SWAT team, to execute the search warrant at Bullock's home. They allege that this decision amounted to excessive force because the officers had no reason to believe that they would encounter "any armed resistence or other dangerous threat."[22]  Plaintiffs allege that more than 20 officers were involved in the raid and 8 entered Bullock's home.  Plaintiffs' expert stated that Vinson's decision to use as many SRT officers as were available in executing the search warrant was likely to lead to constitutional violations because of safety concerns.  In addition, the expert opined that Vinson's decision was out of proportion with the suspected offense and was "possibly an abuse of power designed to intimidate residents."[23]

---

[20] *Id.* at 378.

[21] *Id.* at 382.

[22] R. Doc. 73.

[23] R. Doc. 73-10.

Here again, Plaintiffs have alleged no prior incidents in which the use of a high number of officers in the execution of a search warrant has lead to constitutional violations. In addition, Plaintiffs have not convinced this Court that Vinson's decision to use 20 SRT officers violated Bullock's constitutional rights nor have they provided evidence of a causal connection between Vinson's decision and the injuries sustained by Bullock.[24] Further, they have provided no evidence that Vinson made this decision with the deliberate indifference of a known constitutional violation. Indeed, Vinson stated in his deposition that the decision was made after a threat assessment, which considered the criminal history of the target of the search, the history of threats against police officers from members of the family, and the unawareness of how many people might be inside the house.[25] In addition, Vinson specifically chose to execute the warrant in broad daylight[26] and refrained from using distraction devices, such as flash-bang grenades,[27] because of his awareness of Bullock's health condition. Clearly, his decision as to how to execute the search warrant was precisely the type of discretionary decision that the doctrine of qualified immunity seeks to insulate.[28]

---

[24] *See Rios*, 444 F.3d at 425 ("[A] plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.").

[25] R. Doc. 86-1.

[26] R. Doc. 72-4.

[27] R. Doc 73, at p. 12.

[28] *See Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1092 (5th Cir. 1997) ("In particular, the decision whether to enter Tamez's house required [the officer] to balance the property rights and constitutional liberties of the homeowner against the interests of anyone who might be hurt inside, considerations of the safety of his fellow officers, and the exigencies of the moment. This decision clearly falls within the realm of discretionary decisions police officers commonly make.").

Therefore, this Court finds that he is entitled to qualified immunity from these claims.

## CONCLUSION

Accordingly, this Court GRANTED the Defendant's Motion for Summary Judgment Based on Qualified Immunity and this case was DISMISSED WITH PREJUDICE.  All other pending motions are DENIED AS MOOT.


New Orleans, Louisiana, this 9th day of October, 2014.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

9